Argued and submitted April 20, 2006, at Franklin High School, Portland, affirmed February 28, appellant's petition for reconsideration filed March 13 allowed by opinion June 27, 2007
See 213 Or App 584, _____ P3d _____ (2007)

## STATE OF OREGON,
*Respondent,*

*v.*

## DAVID BURTON WHITE,
*Appellant.*

### CF020469; A122135

154 P3d 124

Mary M. Reese argued the cause and filed the brief for appellant.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Ortega, Judge, and Wilson, Judge pro tempore.

ORTEGA, J.

## ORTEGA, J.

Defendant appeals his convictions for interfering with a peace officer, ORS 162.247, and first-degree arson, ORS 164.325.[1] Defendant first assigns error to the trial court's denial of his motion for judgment of acquittal on the charge of interfering with a peace officer, contending that the police officer's order, which led to that conviction, was not lawful. Defendant also assigns error to the trial court's ruling allowing a rebuttal witness to testify, contending that the state committed a discovery violation with respect to that witness. We affirm both rulings.

When reviewing a motion for a judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether a rational trier of fact, making reasonable inferences, could have found that the state proved the essential elements of the crime beyond a reasonable doubt. *State v. Turley*, 202 Or App 40, 48, 120 P3d 1229 (2005), *rev den*, 340 Or 157 (2006).

The police and fire departments responded to a fire at defendant's home. Because of the nature of the fire and other suspicious circumstances, the fire chief believed that the fire might have been caused by arson and requested an investigation. When defendant arrived on the scene the morning of the fire, a police lieutenant informed him that crime-scene barrier tape would be placed around his house and that defendant could not go inside until the crime scene was opened and the barrier tape was removed. Yellow crime-scene tape printed with "FIRE LINE DO NOT CROSS" was placed around the house.

Several hours later, an arson investigator arrived on the scene. He asked defendant to compile a list of items that he would not want to lose in a fire and their location in the house. In the investigator's experience, people who deliberately set fire to their residences will often remove photo albums and other valuables before setting the fire. The investigator also asked defendant to sign a consent form giving the

---

[1] The 2005 Legislative Assembly amended both statutes. Or Laws 2005, ch 668, § 1; Or Laws 2005, ch 706, § 4. The amendments are not relevant to our analysis; accordingly, we cite to the current versions.

police permission to enter his house in order to investigate the fire. The form indicated that, if defendant later wanted to revoke that consent, he needed to tell the police that he wanted them out of his house. Nothing in the consent form stated that defendant could not enter his house while the police were there. In addition, the investigator did not suggest to defendant that, by signing the form, he was also consenting to stay out of the house. Defendant read and signed the form.

The next morning, a police officer saw defendant walking briskly from a neighbor's house directly toward his garage. The officer shouted several times at defendant to stop. Defendant turned and looked at the officer but continued under the crime-scene tape and into the garage. The officer saw that defendant was carrying papers in his left hand and appeared to be holding something under his jacket in his right hand. The officer entered the garage and questioned defendant, who seemed to be very nervous and indicated that he was there to deliver the requested list to the investigator.

The investigator later entered the garage and found a photo album that had not been present before defendant's entry. Defendant later admitted to placing the photo album in the garage, explaining that he had felt intimidated by the investigator's questions about valuables in the house and had put the photo album in the garage to "meet [the investigator's] needs."

A jury convicted defendant of one count of interfering with a peace officer, ORS 162.247, and one count of arson, ORS 164.325. During trial, defendant moved for a judgment of acquittal on the charge of interfering with a peace officer, contending that the officer's order for defendant to stop was unlawful. Also, defendant objected to allowing one of the state's witnesses to testify on the ground that the state had failed to "promptly" notify him about that witness, violating discovery rules. See ORS 135.845(2). The trial court denied defendant's acquittal motion and allowed the state's witness to testify.

On appeal, defendant contends that the trial court should have granted his motion for judgment of acquittal because the state failed to prove that he refused to obey a

"lawful order," which is one of the elements of the crime of interfering with a police officer. ORS 162.247 provides, in part:

> "(1) A person commits the crime of interfering with a peace officer if the person * * *:
>
> "* * * * *
>
> "(b) Refuses to obey a lawful order by the peace officer * * *."

The order at issue here was the officer's directive to defendant to stop before entering his garage. Defendant acknowledges, and we agree, that the order was lawful if the police had the authority, under the state and federal constitutions,[2] to enter defendant's house and divest him of the right to possess, use, or enter it. That authority to enter and divest must be pursuant to an exception to the warrant requirement, because no warrant was issued. *See State v. Smith*, 327 Or 366, 376-77, 963 P2d 642 (1998) (a warrantless seizure is unlawful unless it falls within one of the narrow exceptions to the warrant requirement). Here, the relevant exception to the warrant requirement is consent. *See State v. Lambert*, 134 Or App 148, 151, 894 P2d 1189 (1995) (recognizing consent as an exception to the warrant requirement under both the state and federal constitutions).

■ The state first contends that defendant's challenge to the lawfulness of the order was untimely. According to the state, the lawfulness of an order is, like the lawfulness of a search, a question of law that must be raised and decided in pretrial motions rather than in a motion for judgment of acquittal. Defendant responds that, because his challenge was to the sufficiency of the evidence that the order was lawful, the motion was timely. We agree with defendant.

---

[2] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their * * * houses * * * against unreasonable search, or seizure; and no warrant shall issue but upon probable cause * * *."

The text of the Fourth Amendment to the United States Constitution is the same in all material respects. *See State v. Juarez-Godinez*, 326 Or 1, 5 n 2, 942 P2d 772 (1997).

Motions for judgments of acquittal are governed by ORS 136.445, which provides:

"In any criminal action the defendant may, after close of the state's evidence or of all the evidence, move the court for a judgment of acquittal. The court shall grant the motion if the evidence introduced theretofore is such as would not support a verdict against the defendant. The acquittal shall be a bar to another prosecution for the same offense."

Although the statute specifies that such a motion should be made after the close of the state's evidence or after the close of all the evidence, the state contends that defendant should have raised the issue pretrial, because the lawfulness of an order is a question of law rather than a fact issue for the jury.

The state provides no support for that assertion. Although it is true that issues similar to the one presented here often arise in the context of pretrial motions,[3] there exists no pretrial mechanism by which a defendant may challenge the sufficiency of the state's proof of an element of a crime. *See State v. Weber*, 172 Or App 704, 714, 19 P3d 378 (2001) ("[W]e are unaware of any Oregon authority by which a pretrial motion * * * can be employed to challenge the sufficiency of the state's anticipated proof of a charge." (Internal quotations marks omitted.)). Rather, we have treated challenges to the sufficiency of the evidence concerning the lawfulness of an order in the same manner as challenges to the sufficiency of the evidence as to any other element.

■ For example, an essential element of criminal trespass in the second degree, ORS 164.245,[4] is that the underlying order to leave the premises must be "lawful." *State v.*

---

[3] The facial constitutionality of statutes concerning "lawful orders," for example, may be raised by way of demurrer. *State v. Ausmus*, 336 Or 493, 85 P3d 864 (2003).

[4] ORS 164.245(1) provides, in part:

"A person commits the crime of criminal trespass * * * if the person enters or remains unlawfully * * * in or upon premises."

ORS 164.205(3) provides, in part:

" 'Enter and remain unlawfully' means:

"* * * * *

"(b) To fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge[.]"

*Riddell*, 172 Or App 675, 679-80, 686-87, 21 P3d 128, *rev den*, 332 Or 430 (2001). The lawfulness of such an order may be limited or circumscribed by statutory or constitutional provisions and may be raised as a defense. *State v. Marbet*, 32 Or App 67, 72, 573 P2d 736 (1978). Accordingly, "[w]hether a person has a constitutional right to remain as an incident to the proper exercise of a constitutionally protected right may be inquired into in contesting the lawfulness of the direction to leave the premises." *Id.* at 73. When the lawfulness of an order is raised as a defense, the state still has the burden of proving the element and disproving the defense beyond a reasonable doubt. *State v. Cargill*, 100 Or App 336, 341, 341 n 5, 786 P2d 208 (1990), *aff'd by an equally divided court*, 316 Or 492, 851 P2d 1141 (1993), *overruled on other grounds by Stranahan v. Fred Meyer*, 331 Or 38, 11 P3d 228 (2000).

In *Cargill*, the defendant challenged the lawfulness of an order—claiming that his activity was constitutionally protected—in a motion for a judgment of acquittal. 100 Or App at 340, 348. We reversed the trial court's denial of the defendant's motion because we agreed that he was engaged in a constitutionally protected activity. *Id.* at 348. We noted that the order was unlawful and that, therefore, the state had failed to produce evidence that would support a verdict against the defendant. *Id.*

Here, the lawfulness of the order at issue turns on the scope of defendant's consent. Scope of consent is most often addressed pretrial in response to a motion to suppress certain evidence. *See, e.g., State v. Buchanan*, 185 Or App 68, 57 P3d 930 (2002); *State v. Jacobsen*, 142 Or App 341, 922 P2d 677 (1996); *State v. Arroyo-Sotelo*, 131 Or App 290, 884 P2d 901 (1994). In a motion to suppress, although the question whether the scope of consent was exceeded is ultimately a question of law, its resolution may involve preliminary fact determinations. *Arroyo-Sotelo*, 131 Or App at 294-95; *see also State v. Weaver*, 319 Or 212, 222, 874 P2d 1322 (1994) (Gillette, J., concurring). Such pretrial evidentiary rulings are for the court, not the jury, even though they may involve factfinding. *See State v. Hawk*, 38 Or App 117, 119, 589 P2d 1136, *rev den*, 286 Or 303 (1979).

In this situation, however, the factual determination of the scope of defendant's consent bears on whether the state proved an element of the crime, the lawfulness of the order. It is for the jury to decide the factual predicates underlying the elements of a crime. Accordingly, defendant's motion was properly brought under ORS 136.445, and the motion was timely.

■ The state next contends that, even if the motion was timely, the consent form that defendant signed (which is not in the record) authorized the police both to enter plaintiff's property and to exclude him from it and that, accordingly, the order to defendant not to enter his property was lawful.[5] Defendant contends that the consent form only allowed the police to enter his house, but did not give the police authority to divest him of the right to possess, use, and enter it. In the alternative, defendant argues that, even if the form allowed dispossession, he revoked that consent by entering his garage.

■ The standard for determining the scope of a person's consent under both Article I, section 9, and the Fourth Amendment is one of objective reasonableness. *State v. Fugate*, 210 Or App 8, 18, 150 P3d 409 (2006). Under that standard, we must consider whether a reasonable person would have understood by the exchange between the officer and the consenting party that the defendant actually consented. *Arroyo-Sotelo*, 131 Or App at 295-96. That requires a consideration of the particular circumstances of the exchange, including the substance of the officer's request. *Fugate*, 210 Or App at 18.

---

[5] The state also contends for the first time on appeal that the order to stop was lawful based on the officer's reasonable suspicion that defendant was attempting to commit the crime of tampering with physical evidence. ORS 131.615 (providing that "[a] peace officer who reasonably suspects that a person has committed or is about to commit a crime may stop the person and * * * make a reasonable inquiry"); ORS 162.295 (setting forth the elements of the crime of tampering with physical evidence). However, even if we were inclined to consider that argument for the first time on appeal, nothing in the record indicates that the officer subjectively believed that defendant was about to commit a crime. *State v. Guest,* 207 Or App 395, 399, 142 P3d 482 (2006) (" 'Reasonable suspicion' has a subjective and an objective component; a police officer must subjectively believe that the stopped person committed or is about to commit a crime, and that belief must be objectively reasonable.").

As noted above, we do not have a copy of the consent form in the record. The investigator testified that the form expressly gave the police authority to "search," *i.e.*, to enter defendant's home to investigate the fire. *State v. Barnum*, 136 Or App 167, 172, 902 P2d 95 (1995), *rev den*, 323 Or 336 (1996) (recognizing that a "search" occurs when a government agent intrudes on a person's privacy interests). His testimony further indicated, however, that the form did not expressly give the police authority to "seize," that is, to divest defendant of the right to enter the property. *State v. Binner*, 131 Or App 677, 681, 886 P2d 1056 (1994) (explaining that a "seizure" of property occurs when there is a significant interference with a person's possessory interest in the property). Therefore, the question is whether defendant understood the form to encompass exclusion from his property.

We conclude that, viewing the evidence in the light most favorable to the state and giving the state the benefit of all reasonable inferences, the factfinder could reasonably find from the circumstances that the scope of defendant's consent included exclusion from his property. First, the evidence indicates that the purpose of the consent form was to allow the police to conduct a fire investigation. A reasonable person could find that defendant understood that, when the police are investigating a fire, it is important to keep contamination of the scene to a minimum, which requires that persons other than the police must stay off the property. Additionally, at the time defendant signed the form, the crime-scene investigation tape explicitly stating, "FIRE LINE DO NOT CROSS," had been secured around defendant's residence, providing a further indication that the investigation to which defendant was consenting would involve barring unauthorized persons from the residence. Finally, the investigator had already explained to defendant that, once the investigation was underway and the tape was secured, he would not be allowed onto the property. Accordingly, in light of the particular circumstances of this case, it is reasonable to infer that the scope of defendant's consent included exclusion from his property.

There may be other reasonable inferences that would support a finding that defendant's scope of consent did not encompass dispossession. However, when at least one inference supports a verdict against a defendant, as is the case

here, it is for the factfinder to choose between the competing inferences, and a motion for a judgment of acquittal should be denied. *State v. Derry*, 200 Or App 587, 591, 116 P3d 248 (2005), *rev den*, 340 Or 34 (2006).

■ Finally, defendant argues that, even if he had consented to dispossession, he revoked that consent when he entered his property. We disagree. The investigator testified that the form defendant signed outlined the procedure by which to revoke consent, indicating that, in order to revoke, defendant needed to tell the police that he wanted them out of his house. There is no evidence in the record that defendant made any such statement to anyone when he entered his property in violation of the officer's direction to stop. Accordingly, the trial court correctly denied defendant's motion for judgment of acquittal.

■ Defendant's second assignment of error challenges the trial court's ruling allowing the testimony of a state's witness despite an alleged discovery violation. In reviewing discovery rulings, we are bound by the trial court's factual findings, provided that they are supported by evidence in the record. *State v. Lindquist*, 141 Or App 84, 87, 917 P2d 510 (1996). When no findings are made, and the evidence is such that the facts could be decided more than one way, we conclude that the facts were decided in a manner consistent with the court's ultimate conclusion. *Id.* at 88. Whether those facts add up to a discovery violation is a question of law. *Id.*

The relevant statutes require the prosecutor to disclose the "names and addresses" of witnesses the state intends to call. ORS 135.815(1)(a). If the state discovers additional witness information during trial, it must "promptly" notify the defendant:

> "If, after complying with the provisions of ORS 135.805 to 135.873 and 135.970, a party finds, either before or during trial, additional material or information which is subject to or covered by these provisions, the party must promptly notify the other party of the additional material or information."

ORS 135.845(2). The parties agree that the state notified defense counsel on the next to last day of trial of its intent to call Clayton, the reserve officer who was posted at defendant's home the morning after the fire. Defendant contends

that the notification was not "prompt" within the meaning of ORS 135.845(2) because it occurred an entire week after the prosecutor determined a need to call Clayton and directed his investigator to locate him.

We conclude that the state complied with the statute. Clayton was called to testify that he did not hear a loud vehicle while posted at defendant's home the morning after the fire. The prosecutor explained that the issue that Clayton was called to address did not come to his attention until defense counsel's opening statement, in which he asserted that, if defendant had set the fire, neighbors would have heard defendant's car, which was very noisy. The prosecutor then directed his investigator to locate the officer who had been posted at the scene the morning after the fire, when defendant had returned to the scene. According to the prosecutor, it took several days to determine who that officer was, and the day that the state determined Clayton's name, defense counsel was notified.

We conclude that the trial court decided the facts in a manner consistent with the state's version of events and that the state disclosed its intent to call Clayton the day it determined his identity. That disclosure was sufficiently prompt to comply with ORS 135.845(2). Consequently, the trial court's determination that there was no discovery violation was correct.

Affirmed.