Argued and submitted December 22, 2009, in Case No. A137720, conviction for criminal trespass in the second degree reversed; remanded for resentencing; otherwise affirmed; in Case No. A137721, affirmed October 27, 2010, petition for review denied January 14, 2011 (349 Or 601)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RICHARD LUCAS KOENIG,
*Defendant-Appellant.*

Washington County Circuit Court
D070381M, D074624M;
A137720 (Control), A137721

242 P3d 649

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Anna M. Joyce, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Brewer, Chief Judge, and Wollheim, Judge, and Sercombe, Judge.*

SERCOMBE, J.

* Brewer, C. J., *vice* Edmonds, P. J.

**SERCOMBE, J.**

Defendant appeals judgments of conviction in two consolidated criminal cases on five counts of telephonic harassment, ORS 166.090,[1] and one count of criminal trespass in the second degree, ORS 164.245.[2] Defendant assigns error to the trial court's denial of his motion for judgment of acquittal on all six counts. In addition, in a supplemental assignment of error, defendant argues that the trial court erred in denying his "motion to dismiss" the count of criminal trespass in the second degree. For the reasons that follow, we reverse defendant's conviction on the count of criminal trespass in the second degree and otherwise affirm.

We begin by considering whether the trial court erred in denying defendant's motion for judgment of acquittal as it relates to the five counts of telephonic harassment. Those five counts arose out of defendant's conduct in calling various Washington County public offices. On January 5, 2007, in response to "increasingly disruptive, time-consuming, and rude" telephone calls by defendant, the Office of Washington County Counsel issued a letter forbidding defendant from calling the Office of Washington County Counsel, the Washington County Administrator's Office, or the Washington County Human Resources Department, for a period of three years. In addition, that same day, the Washington County Sheriff's Office issued a letter forbidding defendant from calling the Washington County Sheriff's Office because defendant's calls to the Sheriff's Office had also become "increasingly time consuming and disruptive."

---

[1] ORS 166.090 provides, in relevant part:

"(1) A telephone caller commits the crime of telephonic harassment if the caller intentionally harasses or annoys another person:

"* * * * *

"(b) By causing such other person's telephone to ring, knowing that the caller has been forbidden from so doing by a person exercising lawful authority over the receiving telephone[.]"

[2] ORS 164.245(1) provides: "A person commits the crime of criminal trespass in the second degree if the person *enters or remains unlawfully* in a motor vehicle or in or upon premises." (Emphasis added.) And, as relevant in this case, ORS 164.205(3)(c), in turn, defines "enter or remain unlawfully" as "[t]o enter premises that are open to the public after being lawfully directed not to enter the premises."

Defendant was instructed in both letters that he could conduct any necessary business with the respective offices through written correspondence.

In February 2007, defendant made calls to the Office of Washington County Counsel and the Washington County Human Resources Department. And, in October 2007, defendant made additional calls to the Washington County Administrator's Office and the Washington County Sheriff's Office. On the basis of those additional calls, defendant was charged with the five counts of telephonic harassment of which he was ultimately convicted.

Defendant waived his right to a jury trial and, following the close of the state's case-in-chief, moved for a judgment of acquittal. As to the counts of telephonic harassment, he argued that there was no evidence that his intent at the time he caused the phones to ring was anything other than to discuss state law and obtain information. In particular, defendant contended that his intention was not to vex, annoy, or harass, but only to obtain information and communicate his views.[3] The trial court denied the motion and, ultimately, rendered a guilty verdict on each of the telephonic harassment counts.

On appeal, defendant argues that "the state is required to prove that a defendant charged with telephonic harassment under ORS 166.090(1)(b) had the intent to harass when he placed the call *and* knew that he was prohibited from calling by someone exercising lawful authority over the receiving telephone." (Emphasis in original.) Defendant renews the argument he made below that the record is devoid of evidence that he had the intent to harass or annoy the recipients of the calls at the time he caused the telephones to ring; rather, according to defendant, the record indicates that his intent at that time was to obtain information. Defendant also argues that calls made before the issuance of the letters

---

[3] In moving for judgment of acquittal on the telephonic harassment counts, defendant also argued that he was making the "same basic argument," under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, that he had previously made with respect to the criminal trespass count. On appeal, defendant does not renew his due process argument with respect to the counts of telephonic harassment and, accordingly, we do not address it.

forbidding him from calling are not relevant to determining his intent in placing the calls underlying the telephonic harassment charges. In addition, defendant argues that, if ORS 166.090 requires a factfinder to consider the content of the words spoken by the caller to determine whether the caller committed the crime of telephonic harassment—*i.e.,* whether the caller intended to harass or annoy the recipient —then ORS 166.090 violates the free speech protections of Article I, section 8, of the Oregon Constitution.[4]

The state responds that the circumstantial evidence presented in this case could lead a rational trier of fact to conclude that defendant intended to harass or annoy the recipients of his calls. As part of the evidence from which defendant's intent can be inferred, the state relies on defendant's own testimony at trial. There, defendant testified that "the prerogative of the people is to bother their public servants until they do what their oath of office says." Further, defendant testified, "When you first don't get a response, sometimes you escalate. * * * If you still don't get a proper response, you escalate some more." Although the state acknowledges that defendant may have intended to address various government policies with his calls, the state contends that "[defendant] also intended to annoy."

■■ We review the denial of a motion for judgment of acquittal to determine "whether, after viewing the facts in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Schneider,* 229 Or App 199, 201, 211 P3d 306 (2009) (citing *State v. Cunningham,* 320 Or 47, 63, 880 P2d 431 (1994), *cert den,* 514 US 1005 (1995)). Although defendant moved for judgment of acquittal following the state's case-in-chief, "we consider the whole record to determine whether there is sufficient corroborative evidence." *Id.* (citing *State v. Lamphere,* 233 Or 330, 332, 378 P2d 706 (1963)).

A telephone caller commits the crime of telephonic harassment, as provided by ORS 166.090(1), if

---

[4] Article I, section 8, provides, "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for abuse of this right."

"the caller intentionally harasses or annoys another person:

"(a) By causing the telephone of the other person to ring, such caller having no communicative purpose;

"(b) By causing such other person's telephone to ring, knowing that the caller has been forbidden from so doing by a person exercising lawful authority over the receiving telephone; or

"(c) By sending to, or leaving at, the other person's telephone a text message, voice mail or any other message, knowing that the caller has been forbidden from so doing by a person exercising lawful authority over the receiving telephone."

In *State v. Allison*, 325 Or 585, 589, 941 P2d 1017 (1997), the Supreme Court held that subsection (1)(a) of that statute requires proof of *both* intent to harass or annoy and "no communicative purpose" on the part of the caller. By parity of reasoning, subsection (1)(b) requires proof of intent to harass or annoy and knowledge that "the caller has been forbidden from [causing another person's telephone to ring] by a person exercising lawful authority over the receiving telephone." On appeal, defendant challenges only the sufficiency of the evidence as to his intent to harass or annoy the recipients of his calls.

■■ As an initial matter, we disagree with defendant's argument that a trier of fact is prohibited, under Article I, section 8, from considering the content of his calls when determining whether he possessed the requisite intent to have violated ORS 166.090(1)(b). Generally, "the content of a person's speech may be used to prove a mental element of a crime." *Allison*, 325 Or at 590 (citing *State v. Plowman*, 314 Or 157, 167, 838 P2d 558 (1992) (statement "I am going to kill you" may evidence the intent element of murder or attempted murder)). This case falls within that general rule, and defendant's reliance on *State v. Johnson*, 345 Or 190, 191 P3d 665 (2008) (*Johnson I*), to persuade us otherwise is misplaced.

In *Johnson I*, the court held that the prohibition contained in ORS 166.065(1)(a)(B) (harassment by publicly insulting another person by abusive words or gestures in a

manner intended and likely to provoke a violent response) was overbroad on its face so as to violate Article I, section 8. 345 Or at 197. The court, in reaching that conclusion, discussed, at length, the reasoning of *State v. Robertson*, 293 Or 402, 416-18, 649 P2d 569 (1982). *Robertson* identified three categories of cases that raise Article I, section 8, concerns: (1) cases involving laws that focus on the content of speech and writing; (2) cases involving laws that focus on proscribing the pursuit or accomplishment of forbidden results by expressly prohibiting expression to achieve those results; and (3) cases involving laws that focus on proscribing the pursuit or accomplishment of forbidden results without referencing expression at all, but where a person is nonetheless accused of causing such results by language or gestures. 293 Or at 416-18.

The statute at issue in *Johnson I* fell squarely into the second *Robertson* category. ORS 166.065(1)(a)(B) prohibited harassment (a forbidden result) by the express means of abusive words or gestures (expression); the court found the statute to be facially overbroad. *Johnson I*, 345 Or at 197. In contrast, ORS 166.090(1)(b) prohibits harassment (a forbidden result) by the express means of causing another person's telephone to ring (nonexpressive conduct), and defendant was charged accordingly. Put another way, the expressive conduct identified by defendant (his speech during the telephone calls) is not relevant to proving the forbidden result (harassment), as was the case in *Johnson I*; rather, that expressive conduct, along with other evidence, is relevant to show defendant's intent. Proof of a mental state is required for most crimes. *See* ORS 161.095(2) (describing the necessity of a culpable mental state for criminal offenses except as otherwise provided). Criminal laws are not unconstitutional under Article I, section 8, simply because that culpable mental state might be proved by expressive conduct. Here, the trier of fact's consideration of the content of the calls to infer defendant's intent to harass or annoy under ORS 166.090(1)(b) did not violate Article I, section 8.[5]

---

[5] Defendant does not argue, and we do not consider, whether ORS 166.090(1)(b) is unconstitutional as applied to him in these circumstances because the statute improperly regulates the manner of his speech. *See Outdoor Media Dimensions v. Dept. of Transportation*, 340 Or 275, 290, 132 P3d 5 (2006) (regulation

■ Having reviewed the record as a whole in the light most favorable to the state, we conclude that there is sufficient evidence from which a rational trier of fact could have found, beyond a reasonable doubt, that defendant intended to harass or annoy the recipients of his calls. We readily reach that conclusion based on the frequency and length of defendant's calls after receiving the letters forbidding him from calling, the content of those calls, and, most significantly, defendant's own testimony at trial.[6] The trial court did not err in denying defendant's motion for judgment of acquittal on the five counts of telephonic harassment.

We turn, then, to defendant's remaining assignments of error regarding the charge of criminal trespass in the second degree. That count arose out of defendant's conduct in entering Washington County's Public Services Building. On January 24, 2007, the Sheriff's Office issued a notice of exclusion to defendant because, according to the notice, defendant twice insulted entrance security personnel at the county courthouse and disrupted the movement of people there. The notice excluded defendant from several county buildings, including the Public Services Building, for a period of one year. Defendant was allowed under the notice to enter the buildings to conduct necessary official business, including appearing on his own matters. The exclusion notice indicated that, if, during the exclusion period, defendant needed to conduct such necessary business in the buildings, he was to either register his presence with entrance security officers or contact a listed Sheriff's Office representative one day in advance. In addition, the notice provided that, if defendant wished to appeal the notice, he could "file a writ of review with the Washington County Circuit Court." On January 25,

---

of highway signs by reasonable time, place, and manner restrictions that were unrelated to the substance of any particular message did not violate Article I, section 8). Likewise, petitioner does not contend that the application of ORS 166.090(1)(b) to him violates Article I, section 26, of the Oregon Constitution, which provides that "[n]o law shall be passed restraining any of the inhabitants of the State from assembling together in a peaceable manner to consult for their common good; nor from instructing their Representatives; nor from applying to the Legislature for redress of greviances [sic]."

[6] Given that our conclusion is based on the calls made after defendant was issued the letters forbidding him from calling, we need not address defendant's argument that calls made before the issuance of those letters are irrelevant to determining his intent to harass or annoy the recipients of his calls.

2007, the day after the notice was issued, defendant, in fact, filed such a petition for writ of review.

On February 8, 2007, defendant had business to conduct in the courthouse regarding a set-over that he sought in his writ of review case. Two deputies escorted defendant around the courthouse while he conducted that business. Thereafter, the deputies watched defendant leave the courthouse and walk toward the Public Services Building. The deputies followed defendant and located him inside that building, where defendant told the deputies that he did not have any official business to conduct there. Defendant was then arrested and subsequently charged with criminal trespass in the second degree pursuant to ORS 164.245. The charging instrument alleged, "The defendant, on or about February 8, 2007, in Washington County, Oregon, did unlawfully and knowingly enter and remain in and upon premises located at 155 N. First Avenue, Hillsboro OR[,] contrary to the statutes and against the peace and dignity of the State of Oregon." On March 9, 2007, a month after being charged with criminal trespass, an order was entered in defendant's writ of review case dismissing his petition.

Before his criminal trial in November 2007, defendant filed a "motion to dismiss" all charges, including the count of criminal trespass in the second degree. In his supporting memorandum, defendant argued that the notice of exclusion was unlawful and violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution on both substantive and procedural grounds.[7] Under substantive due process, defendant argued that the notice was unlawful because it interfered with his fundamental right to petition government departments and was not narrowly tailored to achieve a compelling state interest. Under procedural due process, defendant argued that the notice was unlawful because the availability of the appeal process indicated in the notice was a "sham" and that process—a writ of review—made no provision for the taking of evidence. Thus, defendant contended, "[b]ecause of those

---

[7] The Fourteenth Amendment provides, in part, that no state shall "deprive any person of life, liberty, or property, without due process of law[.]"

two due process violations, the [notice is] not lawful and cannot serve as the basis for criminal prosecution." The trial court denied the "motion to dismiss." Defendant later renewed his procedural due process argument in his motion for judgment of acquittal. The trial court also denied that motion and, ultimately, found defendant guilty of criminal trespass in the second degree.

■ On appeal, defendant separately assigns as error the denial of his "motion to dismiss" and the denial of his motion for judgment of acquittal on the count of criminal trespass in the second degree. Defendant reprises the same procedural due process arguments he made below with respect to each assignment of error; specifically, defendant contends that he had a fundamental liberty interest in petitioning his government for redress of grievances, and that, "[b]ecause [he] did not have the ability to challenge the [notice of exclusion], the state failed to present evidence that [he] was 'lawfully directed not to enter' the Public Services Building as required by ORS 164.245." The state agrees with defendant that the trial court erred when it denied his "motion to dismiss" and asks this court to vacate, rather than reverse, defendant's conviction; the state contends that a remand to the trial court to afford defendant process on the notice of exclusion is the appropriate disposition. In addition, the state notes that its "concession" on defendant's assignment of error regarding the "motion to dismiss" obviates its need to address the merits of defendant's assignment of error regarding the motion for judgment of acquittal.

Although the state has conceded a legal conclusion— that the trial court erred in denying the "motion to dismiss"— we are not obligated to take such a concession at face value. *See State v. Miller*, 345 Or 176, 186-87 n 7, 191 P3d 651 (2008). Indeed, in this case, both parties invite us to perpetuate their misunderstanding of the trial court's pretrial ability to dismiss a criminal case. As we have stated before,

"Oregon law provides for motions to dismiss on a range of grounds. *See, e.g.,* ORS 135.470 (former jeopardy); ORS 135.745 to ORS 136.750 (precharge delay and speedy trial); *State v. Nelson,* 166 Or App 189, 194, 999 P2d 1161 (2000) (prosecutorial vindictiveness). However, we are unaware of

any Oregon authority by which a pretrial 'motion to dismiss' can be employed to challenge the sufficiency of the state's anticipated proof of a charge. *See State v. Huffman,* 49 Or App 823, 826, 621 P2d 78 (1980) (dismissal inappropriate remedy when officer exceeded his authority in serving summons outside his jurisdiction)."

*State v. Weber,* 172 Or App 704, 714, 19 P3d 378 (2001). Here, defendant's challenge in his "motion to dismiss" concerned whether he was "lawfully directed" not to enter the Public Services Building. That is an evidentiary matter. *See State v. Johnson,* 163 Or App 74, 77, 988 P2d 913 (1999), *rev den,* 329 Or 589 (2000) (*Johnson II*) (whether a defendant was "lawfully directed" to leave the premises was an evidentiary matter). Defendant's argument in his "motion to dismiss" specifically regards the sufficiency of the state's anticipated proof—the notice of exclusion. The trial court did not err in denying defendant's "motion to dismiss."[8]

 The proper procedural vehicle for challenging the sufficiency of the state's evidence in this case was a motion for judgment of acquittal—a motion that defendant, in fact, made. Therefore, we next consider whether the trial court erred in denying defendant's motion for judgment of acquittal as it pertained to the count of criminal trespass in the second degree. To recall, ORS 164.245(1) provides that "[a] person commits the crime of criminal trespass in the second degree if the person *enters or remains unlawfully* in a motor vehicle or in or upon premises." (Emphasis added.) ORS 164.205(3)(c), in turn, defines "enter or remain unlawfully" as "[t]o enter premises that are open to the public after being *lawfully directed* not to enter the premises." (Emphasis added.) Here, defendant's only challenge to the sufficiency of the state's proof is that the notice of exclusion was not lawful because he was not provided with any process by which to challenge it. For the reasons that follow, we agree with defendant that his motion for judgment of acquittal should have

---

[8] Nor would recasting defendant's "motion to dismiss" as a demurrer lead to a different result. "A defendant may demur to an accusatory instrument when, *inter alia,* 'it appears upon the face thereof * * * that the facts stated do not constitute an offense.' ORS 135.630." *Weber,* 172 Or App at 713. The charging instrument in this case makes no reference to the notice of exclusion that defendant challenges in his motion; accordingly, defendant's "motion to dismiss" is not a facial challenge to the sufficiency of the charging instrument.

been granted on the count of criminal trespass in the second degree.

To prevail at trial, the state had to produce evidence to show that defendant was "lawfully directed" not to enter the Public Services Building. *See* ORS 164.205(3)(c). In *State v. Marbet*, 32 Or App 67, 71-73, 573 P2d 736 (1978), we considered the meaning of "lawfully directed" as used in a prior version of ORS 164.205, which then, as now, defined "enter or remain unlawfully" under subsection (3)(b) as "[t]o fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge." In *Marbet*, we stated that "[w]hether a person has a constitutional right to remain as an incident to the proper exercise of a constitutionally protected right may be inquired into in contesting the lawfulness of the direction to leave the premises." 32 Or App at 73. Further, we explained, "[i]f the authority of the person in charge to expel an individual from the premises is not limited by a constitutional or statutory right of the individual to remain, the order must be obeyed at the risk of a conviction for trespass." *Id.*

We more recently discussed the meaning of "lawfully directed" for purposes of proving criminal trespass in the second degree in *State v. White*, 211 Or App 210, 154 P3d 124, *adh'd to as clarified on recons*, 213 Or App 584, 162 P3d 336, *rev den*, 343 Or 224 (2007). In that case, the defendant, who had been convicted of interference with a peace officer under ORS 162.247, argued that his motion for judgment of acquittal should have been granted "because the state failed to prove that he refused to obey a 'lawful order,' which is one of the elements of the crime." *Id.* at 213-14. The state asserted that the defendant should have raised the issue pretrial. *Id.* at 215. In concluding that the defendant's challenge to the sufficiency of the evidence had been timely brought, we discussed similar challenges to the lawfulness of orders underlying charges for criminal trespass in the second degree. *Id.* at 215-16. We explained:

> "[A]n essential element of criminal trespass in the second degree, ORS 164.245, is that the underlying order to leave the premises must be 'lawful.' * * * *The lawfulness of such an order may be limited or circumscribed by statutory or*

*constitutional provisions and may be raised as a defense.*
[*Marbet,* 32 Or App at 72]. * * * When the lawfulness of an
order is raised as a defense, the state has the burden of
proving the element and disproving the defense beyond a
reasonable doubt. *State v. Cargill,* 100 Or App 336, 341, 341
n 5, 786 P2d 208 (1990), *aff'd by an equally divided court,*
316 Or 492, 851 P2d 1141 (1993), *overruled on other
grounds by Stranahan v. Fred Meyer,* [*Inc.,*] 331 Or 38, 11
P3d 228 (2000)."

*Id.* (emphasis added; footnote omitted); *cf. State v. Dahl,* 323
Or 199, 205, 915 P2d 979 (1996) (holding that "[w]hatever the
meaning of 'lawful acts' in the context of ORS 133.033, that
meaning must be consonant with the state and federal
constitutions").

Broadly construed, the phrase "lawfully directed"
contemplates inquiries into the lawfulness of the direction
that go beyond the delegated authority of the person to issue
the direction. Those inquires may include whether the order
complied with particular constitutional provisions. Accord-
ingly, in this case, we conclude that the state was required to
prove at trial that the notice of exclusion directing defendant
not to enter the Public Services Building did not run afoul of
the constitutional right to procedural due process that defen-
dant raised. *Cf. State v. Barnes,* 232 Or App 70, 74, 220 P3d
1195 (2009) (holding that the defendant could not argue that
he was denied procedural due process on the underlying
exclusion order when the record established that he did not
take advantage of the process available to him); *Johnson II,*
163 Or App at 79-80 (rejecting the defendant's procedural
due process challenge to the lawfulness of an underlying
exclusion notice on its merits).

■ ■ "Procedural due process imposes constraints on gov-
ernmental decisions which deprive individuals of 'liberty' or
'property' interests." *Mathews v. Eldridge,* 424 US 319, 332,
96 S Ct 893, 47 L Ed 2d 18 (1976). Most of the specific notice
and hearing requirements dictated by procedural due process
stem from balancing the nature of the private interest
affected by the government action, the risk of an erroneous
deprivation of such an interest given the nature of the proce-
dures used, and the nature of the governmental interest at

stake. *Id.* at 335; *see also Johnson II*, 163 Or App at 79 (discussing the *Mathews* balancing test).

We agree with defendant that he has a protected liberty interest in petitioning his government for redress of grievances and that that interest was constrained by the notice of exclusion. *See Huffman and Wright Logging Co. v. Wade*, 317 Or 445, 459, 857 P2d 101 (1993) (noting that Article I, section 26, of the Oregon Constitution protects the rights to assemble peaceably and to petition the government); *Marbet*, 32 Or App at 75 (noting that the right of access to the courts and administrative agencies is part of the right of petition protected by the First Amendment to the United States Constitution). Accordingly, to comply with procedural due process, it was necessary that defendant be afforded some process compliant with the balancing test enunciated in *Mathews* by which defendant could have obtained timely review of the notice of exclusion in order to safeguard his liberty interest against the risk of erroneous deprivation.

Here, the notice of exclusion itself indicated that, if defendant wished to appeal the notice, he could "file a writ of review with the Washington County Circuit Court." However, as a matter of law, a "writ of review" is available only where the decision sought to be reviewed is issued to a party to a "process or proceeding" before an "inferior court, officer, or tribunal." *See* ORS 34.020 (providing who may obtain a writ of review). Defendant was not a party to *any* process or proceeding before the issuance of the notice; therefore, the notice inaccurately instructed defendant to file a petition for a writ of review.

The record before us is devoid of any other evidence indicating that defendant did obtain, or could have obtained, constitutionally adequate process on the notice of exclusion. Thus, we conclude that there is insufficient evidence in the record from which a rational trier of fact could have found that defendant was "lawfully directed" not to enter the Public Services Building. The trial court erred in denying defendant's motion for judgment of acquittal on the count of criminal trespass in the second degree.[9]

---

[9] The proper remedy for that error is reversal of the criminal conviction. The state's request that we vacate the conviction and remand to afford defendant process on the underlying notice of exclusion is not well taken.

In Case No. A137720, conviction for criminal trespass in the second degree reversed; remanded for resentencing; otherwise affirmed. In Case No. A137721, affirmed.