No. 849 October 1, 2025 671

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAVID TRISTAN FLORES,
*Defendant-Appellant.*

Lane County Circuit Court
23CR13367; A182424

Michelle P. Bassi, Judge.

Submitted June 2, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Joel Duran, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Carson L. Whitehead, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

In this criminal case, defendant appeals his conviction for telephonic harassment under ORS 166.090(1)(b), raising two assignments of error. First, he challenges the denial of his demurrer and motion to dismiss, arguing that the statute is facially unconstitutional because its affirmative defense for debt collectors, ORS 166.090(3), creates a content-based distinction between permitted and prohibited speech. Second, he challenges the denial of his motion for judgment of acquittal, asserting that the statute is unconstitutional as applied to his conduct because it was "directed at the content of defendant's constitutionally protected speech, *viz.*, his exercise of his fundamental liberty interest in personal contact with his child." For the reasons explained below, we conclude that the affirmative defense for debt collectors results in an unconstitutional content-based restriction on free speech, but because it is severable, the remainder of the statute remains operative. Further, we conclude that ORS 166.090(1)(b) is constitutional as applied to defendant. We therefore affirm defendant's conviction.

## BACKGROUND

Because defendant challenges the denial of his motion for judgment of acquittal, we state the facts in the light most favorable to the state. *State v. Koenig*, 238 Or App 297, 301, 242 P3d 649 (2010), *rev den*, 349 Or 601 (2011). In 2020, defendant and J had a child together. Their relationship ended in July 2021, shortly after the child's first birthday. Although defendant and J were never married and neither had sole legal custody, the child resided with J after their separation. In the absence of a court-ordered parenting plan, defendant would contact J by phone or text to arrange parenting time on his days off work. According to J, this informal arrangement was consistent and successful. She described their relationship as "coparents" and "ex-partners."

In January 2023, defendant traveled to Florida to visit family, and during that time, J and defendant coordinated nearly daily phone calls between defendant and the child. However, after defendant returned from Florida, he

began having difficulty reaching J to arrange visits. On March 7, 2023, during a Facetime call, defendant made a comment to the child about "physically disciplining him for spitting." J told defendant that he could not speak to the child that way and needed to apologize. Defendant responded that he "did not need to apologize to his son for disciplining him." Over the next couple of days, the two argued over the phone and Facetime. Two days later, defendant repeatedly texted and called J, asking to speak with or visit the child on his days off. J told defendant to stop contacting her. Although she did not perceive his messages as threatening, she testified that his behavior made her uncomfortable. After being told to stop, defendant continued calling J repeatedly, causing her phone to ring. When she eventually answered, defendant told her he was coming to her apartment and that she needed to bring the child outside.

Defendant later admitted to calling J repeatedly after being told not to and acknowledged using a blocked number to get her to answer. He explained that he "was just pushing it over and over trying to get to [his] son" and "wanted to annoy [J] until [he] got to talk to" the child.

Defendant was charged with telephonic harassment under ORS 166.090(1)(b). ORS 166.090 defines the crime of telephonic harassment as follows:

"(1)    A telephone caller commits the crime of telephonic harassment if the caller intentionally harasses or annoys another person:

"(a)    By causing the telephone of the other person to ring, such caller having no communicative purpose;

"(b)    By causing such other person's telephone to ring, knowing that the caller has been forbidden from so doing by a person exercising lawful authority over the receiving telephone; or

"(c)    By sending to, or leaving at, the other person's telephone a text message, voice mail or any other message, knowing that the caller has been forbidden from so doing by a person exercising lawful authority over the receiving telephone.

"(2)    Telephonic harassment is a Class B misdemeanor.

"(3)  It is an affirmative defense to a charge of violating subsection (1) of this section that the caller is a debt collector, as defined in ORS 646.639, who engaged in the conduct proscribed by subsection (1) of this section while attempting to collect a debt. The affirmative defense created by this subsection does not apply if the debt collector committed the unlawful collection practice described in ORS 646.639 (2)(a) while engaged in the conduct proscribed by subsection (1) of this section."

Before trial, defendant filed a combined demurrer and motion to dismiss, arguing that ORS 166.090(1)(b) violates the free speech guarantees of Article I, section 8, of the Oregon Constitution,[1] the First Amendment to the United States Constitution,[2] and the Equal Protection Clause of the Fourteenth Amendment.[3] He contended that the statute imposes a content-based restriction on speech due to the affirmative defense in ORS 166.090(3), which exempts debt collectors attempting to collect a debt from punishment under the statute. Because the statute grants an affirmative defense based on the subject matter of the communication, defendant argued that it fails to satisfy the established historical exceptions necessary to survive scrutiny under Article I, section 8. He further asserted that the statute cannot survive the strict scrutiny applied under the First Amendment because it is not narrowly tailored to serve a compelling governmental interest. Defendant also raised an equal protection challenge under the Fourteenth Amendment, arguing that ORS 166.090(3) irrationally exempts debt collectors without a sufficient justification and impermissibly limits the defense based on the content of their speech.

---

[1] Article I, section 8, provides that, "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

[2] The First Amendment provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." US Const, Amend I.

[3] In relevant part, the Fourteenth Amendment provides, "[N]o state shall *** deny to any person within its jurisdiction the equal protection of the laws." US Const, Amend XIV, § 1.

In response, the state relied on this court's decision in *State v. Hibbard*, 110 Or App 335, 823, P2d 989 (1991), which upheld ORS 166.090(1)(a)—prohibiting phone calls with no communicative purpose—against similar constitutional challenges. The state argued that *Hibbard* was controlling of defendant's arguments.

At the hearing on defendant's demurrer, the trial court asked defendant to explain why *Hibbard* was not dispositive. Defendant responded that he was charged under a different subsection, ORS 166.090(1)(b), which applies to calls made with communicative intent, and that *Hibbard* did not address the content-based nature of the affirmative defense in ORS 166.090(3). He also argued that *Hibbard* was wrongly decided. The trial court concluded that *Hibbard* was controlling and denied the demurrer and motion to dismiss.

At trial, defendant moved for judgment of acquittal, arguing that ORS 166.090(1)(b) was unconstitutional as applied to the facts of his case because it was directed at the content of his constitutionally protected speech—his repeated efforts to contact J about his child. The trial court denied that motion as well. Defendant was tried by a jury and found guilty of telephonic harassment under ORS 166.090(1)(b). Defendant now appeals.

## DEMURRER AND MOTION TO DISMISS

On appeal, defendant argues that the trial court erred in upholding the constitutionality of ORS 166.090 (1)(b) under Article I, section 8, and the First Amendment. He contends that the statute imposes a content-based restriction on speech because ORS 166.090(3) exempts speech made in the context of debt collection, based solely on its subject matter. Accordingly, he argues that the whole statute is unconstitutional. Even if portions of the statute can be severed, defendant asserts that the portion of the statute applicable to him cannot be saved. Rather, he argues that the only portion of the statute that is complete and can be executed in accordance with the 2005 legislature's intent is ORS 166.090(1)(a), which prohibits telephone calls made with no communicative purpose that are intended to harass or annoy. Alternatively, defendant argues that the statute

violates the Equal Protection Clause of the Fourteenth Amendment because it grants immunity to debt collectors without a rational basis and lacks a compelling state interest for limiting the affirmative defense in ORS 166.090(3) based on the content of a speaker's message.

We review a facial challenge to the constitutionality of a statute for errors of law. *State v. Rangel*, 328 Or 294, 298, 977 P2d 379 (1999). For the reasons explained below, we resolve this case by addressing defendant's state constitutional arguments. *State v. Velykoretskykh*, 268 Or App 706, 707 n 2, 343 P3d 272 (2015) (Under the state court's "'first things first' doctrine, we have an obligation to address state constitutional law claims before federal ones.").

Article I, section 8, provides that, "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right." The analytical framework for evaluating a law's constitutionality under Article I, section 8, is set forth in *State v. Robertson*, which divides laws into three categories. 293 Or 402, 649 P2d 569 (1982) Under *Robertson*'s first category, a law is unconstitutional if it is "written in terms directed to the substance of any 'opinion' or any 'subject' of communication, unless the scope of the restraint is wholly confined within some historical exception" 293 Or at 412. If a law is not directed at the substance of any opinion and survives that inquiry, a court must determine whether "the law focuses on forbidden effects and 'the proscribed means [of causing those effects] include speech or writing,' or whether it is 'directed only against causing the forbidden effects.'" *State v. Babson*, 355 Or 383, 391, 326 P3d 559 (2014) (quoting *Robertson*, 293 Or at 417-18). That framework distinguishes "between laws that focus on the *content* of speech or writing and laws that focus on the pursuit or accomplishment of *forbidden results*." *State v. Plowman*, 314 Or 157, 164, 838 P2d 558 (1992) (emphasis in original). Content-focused laws sometimes are referred to as falling within "the first category of *Robertson*." *E.g.*, *Babson*, 355 Or at 394. The *Robertson* court further divided laws focusing on forbidden effects into laws that expressly prohibit

expression in achieving those results (the second *Robertson* category) and those that do not refer to expression at all (the third *Robertson* category). *Plowman*, 314 Or at 164; *see also Babson*, 355 or at 391 (describing three categories).

Here, the trial court relied on *Hibbard*, which upheld the constitutionality of ORS 166.090(1)(a) but did not address ORS 166.090(1)(b) or the content-based affirmative defense in ORS 166.090(3) that is the focus here. Although defendant argues that the affirmative defense, if found unconstitutional, would render the whole statute unconstitutional due to subsection (3) because it is not severable, we focus only on the particular paragraph at issue in this case—paragraph (1)(b). In assessing that argument, we apply the *Robertson* framework to the defense and then consider if it may be severed.

First, we conclude that the inclusion of ORS 166.090(3) brings ORS 166.090(1)(b) within the first *Robertson* category. ORS 166.090 as a whole expresses the state's interest in prohibiting telephone calls and text messages that are made with the intent to harass or annoy and that do, in fact, harass or annoy the recipient. As the legislative history demonstrates, ORS 166.090 was originally enacted to apply uniformly to all callers, regardless of their occupation or purpose for calling. Police officers, court staff, probation officers, and other individuals whose calls might serve important governmental functions were not exempt. For 18 years, the statute operated without any categorical exemptions. However, in 2005, the legislature added the affirmative defense in ORS 166.090(3) at the request of the Oregon Collectors Association, which argued that professional debt collectors were already subject to extensive regulation under civil law. It provides an affirmative defense for individuals who make harassing or annoying calls in the course of collecting a debt, so long as the conduct does not involve threats or unlawful collection practices. By its text, ORS 166.090(3) is written in terms directed to the subject of communication—debt collection. While the legislature may not have intended to privilege the speech of debt collectors over that of other callers, the practical effect of the affirmative defense is to do precisely that. As such, to be a

constitutional addition to ORS 166.090(1)(b), ORS 166.090(3) must fit within some well-established historical exception that would justify treating communication regarding debt collection differently from communication regarding other subjects.

We are not aware of any well-established historical exception that would justify treating debt collection speech differently from other types of harassing or annoying speech. Accordingly, we find that the inclusion of ORS 166.090(3) makes ORS 166.090(1)(b) a content-based restriction on speech that violates Article I, section 8. Because we resolve the claim under the state constitution, we do not reach defendant's federal arguments.

However, even though we agree with defendant that the inclusion of ORS 166.090(3) makes ORS 166.090(1)(b) unconstitutional, that does not end the matter. We next address whether ORS 166.090(3) can be severed from the remainder of the statute. The doctrine of severability allows a court to strike down an unenforceable or illegal part of a statute, while keeping the valid parts in effect. This allows a statute to continue to operate even if a specific provision is found invalid. *See Outdoor Media Dimensions v. Dept. of Transportation*, 340 Or 275, 300, 132 P3d 5 (2006) (holding that "when part of a statute is found to be unconstitutional, the whole statute need not be invalidated if the unconstitutional part is severable from the remainder of the statute").

ORS 174.040 provides a preference for severing an unconstitutional portion for a statute *unless*:

"(1)   The statute provides otherwise;

"(2)   The remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the remaining parts would not have been enacted without the unconstitutional part; or

"(3)   The remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent."

In *Outdoor Media Dimensions*, the Supreme Court had to decide whether the provisions of the Oregon Motorist

Information Act (OMIA) violated Article I, section 8, by differentiating between signs for on-premises and off-premises activities and for requiring permits for off-premises signs. 340 Or at 300. Pursuant to ORS 174.040, the court determined that the OMIA's provisions were not content neutral but that the OMIA was not unconstitutional in its entirety. *Id.* at 301.[4] The Court could have ended the different treatment either by: (1) striking from the OMIA the exemption from the permit requirement for on-premises signs or (2) striking the permit requirement itself as it applied to off-premises signs. *Id.* Ultimately, it concluded that the appropriate remedy was to strike from the OMIA the permit and fee requirements for off-premises signs. *Id.* at 302.

        None of the three exceptions to severance apply here. First, nothing in the text of ORS 166.090 provides that, if any part of that statute were held to be unconstitutional, the remaining parts should not remain in force. In looking at the second and third factors, as discussed above, the legislative history shows that ORS 166.090 was enacted to protect individuals from unwanted harassing or annoying telephone calls that they had expressly forbidden. For 18 years, the statute applied to all callers, regardless of occupation or purpose, and operated without any categorical exemptions. The affirmative defense in subsection (3), which applies only to a narrow class of callers—debt collectors attempting to collect debts—was added in 2005. The original provisions are not essentially nor inseparably dependent on that affirmative defense. They functioned effectively for nearly two decades before the affirmative defense was added and remain complete and capable of execution consistent with the legislature's intent to prohibit harassing or annoying phone calls from any caller to a person who has directed them to stop.

        Accordingly, we hold that ORS 166.090(3) is severable from ORS 166.090(1)(b).

---

[4] The court explained that "when one part of a statute is found unconstitutional, [the] practice (and the legislature's stated preference) is to sever the offending part and save the remainder of the statute, unless the legislature has directed otherwise, unless the parts of the statute are so interconnected that it appears likely that the remaining parts would not have been enacted without the unconstitutional part, or unless the remaining parts are incomplete and cannot be executed in accordance with legislative intent." *Outdoor Media Dimensions*, 340 Or at 300 (discussing ORS 174.040).

MOTION FOR JUDGMENT OF ACQUITTAL

We turn to defendant's argument that ORS 166.090 (1)(b) is unconstitutional as applied to him. Defendant argues that he was unconstitutionally convicted for the content of his speech when trying to reach his son. The state contends that defendant was convicted of calling J repeatedly after he had been told not to do so, not because of the subject he was calling about.

As quoted in the previous section, we look to the framework set out in *Robertson* to address Article I, section 8, free expression issues. As explained above, when the affirmative defense in ORS 166.090(3) is included, ORS 166.090(1)(b) falls within the first *Robertson* category because its affirmative defense is based on content. However, after ORS 166.090(3) is excised from ORS 166.090(1)(b), ORS 166.090(1)(b) falls within the third *Robertson* category— laws that focus on forbidden effects and do not refer to expression at all. *See Koenig*, 238 Or App at 303 (ORS 166.090 (1)(b) falls in the second *Robertson* category because expressive conduct "is not relevant to proving the forbidden result (harassment)"); *see also Plowman*, 314 Or at 164 (describing categories).

To determine whether a "category three" law violates Article I, section 8, as applied to particular conduct, "the court must examine how the law was applied to determine whether the application was directed at the content or the expressive nature of an individual's activities, advanced legitimate state interests, and provided ample alternative opportunities to communicate the intended message." *Babson*, 355 Or at 408. In *Koenig*, we explained that ORS 166.090(1)(b) was constitutional as applied to the defendant there because it "prohibits harassment (a forbidden result) by the express means of causing another person's telephone to ring (nonexpressive conduct), and defendant was charged accordingly. Put another way, the expressive conduct identified by defendant (his speech during the telephone calls) is not relevant to proving the forbidden result (harassment)." 238 Or App at 303. In that case, the defendant did not directly challenge the constitutionality of ORS 166.090(1)(b), rather he only contended that the record was devoid of

evidence that he had the intent to harass or annoy the recipients of the calls. *Id.* at 300-01. We held that a finding of intent to harass or annoy was supported by sufficient evidence based on, among other things, the frequency of the defendant's calls after he had been told not to call. *Id.*; *accord State v. Cook*, 334 Or App 437, 556 P3d 11 (2024) (explaining, regarding ORS 166.090(1)(c), "The intent of the person who sends the text message must be to harass or annoy, but the actual text message itself could be anything. It is the act of sending the text itself that is the proscribed means of causing harm.").

Here, defendant admitted that he "wanted to annoy [J] until [he] got to talk to" the child, establishing his intent to annoy her. Defendant also acknowledged that he repeatedly caused her phone to ring, despite knowing it was her phone and that she had asked him not to call. It is that conduct—not his underlying reason for wanting to reach her—that supports his conviction.

Next, we analyze whether ORS 166.090(1)(b) advances legitimate state interests. Here, the statute serves to protect individuals from unwanted phone calls that are intended to harass or annoy. The legislature has historically sought to protect individuals from harassment as part of its broader objective of ensuring personal security among the citizenry. *State v. Moyle*, 299 Or 691, 700, 705 P2d 740 (1985). The original harassment statute was intended specifically to reach "'disorderly conduct' creating alarm or annoyance for an *individual*," while the disorderly conduct statute was intended to prohibit "disturbances of general or public impact." *Id.* at 700 (quoting Proposed Oregon Criminal Code § 223 (1970) (emphasis in original)). ORS 166.090(1)(b) specifically criminalizes causing a telephone to ring with the intent to harass or annoy after being forbidden to do so by the lawful owner of the telephone. This provision aims to prevent unwanted and intrusive communications that can disrupt individuals' lives and cause emotional distress. We conclude that this provision does advance a legitimate state interest.

Finally, we consider whether there were ample alternatives for the defendant to communicate his message,

and we conclude that there were. We agree with the state that to the extent that defendant believed that J was keeping him from accessing his child, the remedy was not to harass and annoy J with repeated phone calls in violation of ORS 166.090(1)(b). Rather, defendant could have taken one of numerous alternatives, *e.g.*, invoking the judicial process, going to J's house to speak with her, or leaving a note at J's front door.

We find that ORS 166.090(1)(b) is constitutional as applied to the facts of defendant's case. Accordingly, the court did not err in denying his motion for judgment of acquittal pursuant to ORS 166.090(1)(b).

In summary, we conclude that the inclusion of the content-based affirmative defense in ORS 166.090(3) makes ORS 166.090(1)(b) unconstitutional in part, but the defense is severable. Absent the affirmative defense, ORS 166.090 (1)(b) is constitutional and enforceable both on its face and as applied to defendant. Accordingly, we affirm defendant's conviction under ORS 166.090(1)(b).

Affirmed.