Argued and submitted January 7, decision of Court of Appeals reversed; judgment
of circuit court reversed, and case remanded to circuit court for further proceedings
August 7, 2008

STATE OF OREGON,
*Respondent on Review,*

*v.*

WILLIAM CHARLES JOHNSON,
*Petitioner on Review.*

(CC D0304188M; CA A124900; SC S055085)

191 P3d 665

Garrett A. Richardson, Portland, argued the cause and filed the petition for petitioner on review.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Michael H. Simon, Julia E. Markley, and Nicholle Y. Winters, of Perkins Coie LLP, Portland, filed the briefs for *amicus curiae* ACLU Foundation of Oregon, Inc.

GILLETTE, J.

**GILLETTE, J.**

This criminal case presents a question that lies at the intersection between Oregon's constitutional protection of free expression and an Oregon statute that punishes abusive or insulting speech that is calculated to produce a violent response. The Court of Appeals held that ORS 166.065(1)(a)(B), the abusive speech provision of the criminal harassment statute, does not, on its face, violate the free expression protections in Article I, section 8, of the Oregon Constitution,[1] and that the statute also is not unconstitutional as applied to defendant's conduct in this case. *State v. Johnson*, 213 Or App 83, 159 P3d 1213 (2007). For the reasons explained below, we reverse the decision of the Court of Appeals.

Because defendant was convicted of violating the statute, we view the underlying facts in the light most favorable to the state. *State v. Murray*, 340 Or 599, 601, 136 P3d 10 (2006). Defendant found himself stuck in rush hour traffic near a car that was occupied by two women, one white and one black. The car had a rainbow decal on the rear, which caused defendant to assume that the women were lesbians. The women's car pulled in front of defendant's pickup truck as the lanes narrowed from two to one. Defendant became angry and began "tailgating" the women and, using some kind of sound amplification system, shouted various obscene and racist epithets at the women, accompanied by extremely rude gestures. Defendant's conduct drew the attention of other drivers and lasted for about five minutes as the cars inched through stop-and-go traffic. Eventually, one of the women got out of the car to confront defendant. Defendant did not leave his pickup, but he and the woman engaged in a heated verbal exchange. Defendant did not verbally threaten the woman with violence and no actual violence took place, but the woman later testified that she believed that defendant was trying to incite her to violence. She ultimately returned to her car when her companion intervened and told her that a person in the bed of the pickup was swinging a

---

[1] We set out the cited provisions below, in the text of this opinion.

skateboard in a menacing way.[2] The two women then drove away and called the police.

Defendant was charged with two counts of harassment in violation of ORS 166.065(1)(a)(B). That statute provides:

"A person commits the crime of harassment if the person intentionally:

"(a) Harasses or annoys another person by:

"* * * * *

"(B) Publicly insulting such other person by abusive words or gestures in a manner intended and likely to provoke a violent response[.]"

Defendant demurred to the indictment on the ground that ORS 166.065(1)(a)(B) is unconstitutionally overbroad in violation of Article I, section 8, of the Oregon Constitution, which provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

The trial court disallowed the demurrer. At the conclusion of his ensuing trial, defendant moved for judgment of acquittal on the ground that the evidence was insufficient to support a conviction under ORS 166.065(1)(a)(B) and on the further ground that the statute could not constitutionally be applied to his conduct because his speech was protected under Article I, section 8. The trial court denied defendant's motion. Defendant was convicted on both counts. As noted, the Court of Appeals concluded on defendant's appeal that the statute is constitutional both on its face and as applied, and affirmed defendant's convictions. We allowed defendant's petition for review.

In *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982), this court set out a framework for challenges to statutes under Article I, section 8, of the Oregon Constitution,

---

[2] Defendant was not charged with any offense connected with the actions of the other person in his pickup.

which the court later summarized in *State v. Plowman*, 314 Or 157, 164, 838 P2d 558 (1992):

> "First, the court recognized a distinction between laws that focus on the *content* of speech or writing and laws that focus on proscribing the pursuit or accomplishment of *forbidden results*. 293 Or at 416-17. The court reasoned that a law of the former type, a law 'written in terms directed to the substance of any "opinion" or any "subject" of communication,' violates Article I, section 8,
>
>> " 'unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach.' *Id.* at 412.
>
> "Laws of the latter type, which focus on forbidden results, can be divided further into two categories. The first category focuses on forbidden effects, but expressly prohibits expression used to achieve those effects. The coercion law at issue in *Robertson* was of that category. *Id.* at 417-18. Such laws are analyzed for overbreadth:
>
>> " 'When the proscribed means include speech or writing, however, even a law written to focus on a forbidden effect * * * must be scrutinized to determine whether it appears to reach privileged communication or whether it can be interpreted to avoid such "overbreadth." ' *Ibid.*
>
> "The second kind of law also focuses on forbidden effects, but without referring to expression at all. Of that category, this court wrote:
>
>> " 'If [a] statute [is] directed only against causing the forbidden effects, a person accused of causing such effects by language or gestures would be left to assert (apart from a vagueness claim) that the statute could not constitutionally be applied to his particular words or other expression, not that it was drawn and enacted contrary to article I, section 8.' *Id.* at 417."

(Emphases, brackets, and ellipsis in original; footnote omitted.)

As noted, the harassment statute makes it a crime to "harass[ ][3] or annoy[ ] another person by * * * [p]ublicly insulting such other person by abusive words or gestures in a manner intended and likely to provoke a violent response." ORS 166.065(1)(a)(B). The parties assert that that statute falls into the first part of the second *Robertson* category: the gravamen of the offense is not in the prohibition of expression *per se*, but in the prevention of a type of "harm" that the legislature believes can be caused by expression. We agree with that proposition, as far as it goes: The statute focuses on effects that the legislature wishes to forbid—harassment or annoyance of another person. However, it expressly prohibits the use of particular forms of expression—public insults by abusive words or gestures "likely to provoke a violent response"—as a means to achieve those effects. It is the legislature's prohibition of that expression that requires additional attention.

The device through which the intended, forbidden result (harassment or annoyance) is to be accomplished is described in a peculiar way: "abusive words or gestures" that "publicly insult[ ]" a person other than the offender "in a manner intended and likely to provoke a violent response." There is no requirement that the offender act violently, or even offer to act violently. There is no requirement that either the offender or the person to whom the remarks are addressed be the one who is likely to react violently. There is no requirement that the hearer (or anyone else) actually be put in fear of violence. There is no requirement that the hearer actually respond violently, or respond at all. And, finally, there is no requirement that any possible violence be imminent. The offense is complete if the offender speaks the words or makes the gestures in public in a manner intended (and likely) to provoke a violent response by *someone* at *some time* and the hearer is "harass[ed]" or "annoy[ed]." Put most simply, the statute proscribes a certain species of "harassment" or "annoyance," period.

---

[3] We recognize the circularity of defining a word ("harassment") by essentially repeating it ("harass"), but that circularity does not affect our analysis of defendant's claims in this case.

The parties argue at length over whether ORS 166.065(1)(a)(B), as we have construed it, protects a hearer from a kind of harm "from which the legislature may properly shield individuals by a criminal law." *State v. Moyle*, 299 Or 691, 699, 705 P2d 740 (1985). However, we do not think that the answer to that question is dispositive. Indeed, we assume that the statute reaches at least some circumstances in which we would agree that the hearer would be entitled to protection.[4]

But it is patent that the statute also extends to various species of expression that may not be punished. Even when the legislature seeks to prevent violence produced by speech, it has to take care that it does not do so by criminalizing protected speech. *See Robertson*, 293 Or at 418 (explaining that, when speech is an element of a statute that is directed at an effect, the statute is susceptible to attack for overbreadth). Taunts intended and likely to produce a violent response are not limited to playgrounds and gang disputes. They extend to political, social, and economic confrontations that range from union picket lines to the protagonists on a host of divisive issues, and thus include a wide range of protected speech. Moreover, courts have long recognized that even speech that is intended and likely to produce violence may not be criminalized unless the violence is imminent. *See* Hans A. Linde, *"Clear and Present Danger" Reexamined: Dissonance in the Brandenburg Concerto*, 22 Stan L Rev 1163, 1170 (1970) (describing *Schenck v. United States*, 249 US 47, 39 S Ct 247, 63 L Ed 470 (1919)). It follows, we believe, that a harassment statute that lacks that limitation sweeps too much protected speech within its reach to survive a facial challenge.

Harassment and annoyance are among common reactions to seeing or hearing gestures or words that one finds unpleasant. Words or gestures that cause only that kind of reaction, however, cannot be prohibited in a free society, even if the words or gestures occur publicly and are insulting, abusive, or both. Stated another way, ORS

---

[4] One example would be a case in which a speaker addressed a member of the audience with such epithets and abuse that other members of the audience might reasonably be expected to attack the person who had been singled out for abuse.

166.065(1)(a)(B) constitutionally may protect a hearer or viewer from exposure to a reasonable fear of immediate harm due to certain types of expression, but it cannot criminally punish all harassing or annoying expression. As this court most recently stated in *State v. Ciancanelli*, 339 Or 282, 317, 121 P3d 613 (2005), "among the various historical crimes that are 'written in terms' directed at speech, those whose *real* focus is on some underlying harm or offense may survive the adoption of Article I, section 8, while those that focus on protecting the hearer from the message do not." (Emphasis in original.)

The consequence of applying the foregoing principles to the present case is clear. Defendant's expression may have been offensive, but the state may not suppress all speech that offends with the club of the criminal law. ORS 166.065(1)(a)(B) criminalizes a harm that results only from a kind of expression—public insults through abusive words or gestures. The harm that the statute seeks to prevent—harassment or annoyance—generally is one against which the Oregon Constitution does not permit the criminal law to shield individuals when that harm is caused by another's speech. For that reason, we conclude that the prohibition contained in ORS 166.065(1)(a)(B) is overbroad on its face and violates Article I, section 8, of the Oregon Constitution.[5]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[5] We recognize that our decision today prevents using the criminal law to alleviate some kinds of distressing circumstances, but that is a consequence of Oregon's explicit protection of freedom of expression in Article I, section 8. We note, however, that our ruling is confined to the state's attempt to use the criminal law in retaliation against defendant's expression. We state no opinion as to whether some civil remedy, or even some other part of the criminal law, might be applied to the facts of this or other, similar cases.