Submitted October 19, 2020, affirmed April 27, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SCOTT WAYNE SMITH,
*Defendant-Appellant.*

Multnomah County Circuit Court
18CR53923; A170791

510 P3d 217

Defendant appeals from a judgment of conviction for second-degree intimidation. On appeal, he argues that the trial court erred in denying his demurrer, in which he asserted that the second-degree intimidation statute, ORS 166.155(1)(c)(A), violated Article I, section 8, of the Oregon Constitution and the First Amendment to the United States Constitution. *Held*: The Court of Appeals analyzed defendant's state constitutional challenge under the legal framework set forth in *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982). In concluding ORS 166.155(1)(c)(A) was a category two law under *Robertson*, the court held that the statute was not overbroad, and thus was facially constitutional. In addition, the court concluded that ORS 166.155(1)(c)(A) was not an impermissible content-based restriction under the First Amendment. Accordingly, the trial court did not err in denying defendant's demurrer under both state and federal constitutional grounds.

Affirmed.

Melvin Oden-Orr, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Peenesh Shah, Assistant Attorney General, filed the brief for respondent.

Before Mooney, Presiding Judge, and Pagán, Judge, and Joyce, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for second-degree intimidation. His conviction arises from an incident in which he used homophobic epithets against a group of people whom he believed to be gay, threatened to kill them, and threatened to blow up the apartment building in which the group lived. On appeal, he argues that the trial court erred in denying his demurrer, in which he asserted that the second-degree intimidation statute violates Article I, section 8, of the Oregon Constitution and the First Amendment to the United States Constitution. We affirm.

The relevant facts are not in dispute. Defendant pleaded no contest to one count of second-degree intimidation. At the plea hearing, the trial court accepted the state's summary of the events leading up to the charge against defendant. Defendant moved into a house across the street from an apartment building. Some of the residents of that building have AIDS and the "vast majority" of the residents identify as members of the LGBTQ+ community. One of the residents told defendant that many of the residents identify as members of that community. Over the course of several months, residents overheard defendant using homophobic slurs. On the day of his arrest, defendant asked one of the residents for a cigarette. Based on defendant's prior behavior, the residents ignored him. Defendant then threatened to kill the residents and to blow up their building, all while using homophobic slurs.

After the state charged him with second-degree intimidation, defendant demurred to the indictment. He argued that the second-degree intimidation statute was facially unconstitutional under Article I, section 8, of the Oregon Constitution[1] and the First Amendment of the United States Constitution.[2] The trial court denied the demurrer;

___

[1] Article I, section 8, of the Oregon Constitution provides, "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

[2] The First Amendment to the United States Constitution prohibits states from enacting laws "abridging the freedom of speech." US Const, Amend I; US Const, Amend XIV (the First Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment).

as noted, defendant pleaded no contest to the charge, reserving his right to challenge the denial of his demurrer. ORS 135.630. He now appeals.

## ARTICLE I, SECTION 8, CHALLENGE

We start with defendant's state constitutional challenge. *State v. Cookman*, 324 Or 19, 25, 920 P2d 1086 (1996) (addressing state constitutional challenges before federal). Defendant's Article I, section 8, challenge is governed by the familiar, if somewhat unwieldy, analytical framework set forth in *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982). Under *Robertson*, a law is unconstitutional if it is "written in terms directed to the substance of any 'opinion' or any 'subject' of communication" unless the scope of the restraint is "wholly confined within some historical exception[.]" *Id.* at 412. If a law is not directed at the substance of any opinion, a court must nonetheless determine whether the law focuses on forbidden effects and "the proscribed means [of causing those effects] include speech or writing," or whether it is "directed only against causing the forbidden effects." *State v. Babson*, 355 Or 383, 391, 326 P3d 559 (2014) (quoting *Robertson*, 293 Or at 417-18). "If the law focuses on the forbidden effects, and the proscribed means of causing those effects include expression, then the law is analyzed under the second *Robertson* category." *Id.* Under that category, we determine "whether the law is overbroad, and, if so, whether it is capable of being narrowed." *Id.* If the law focuses only on forbidden effects, the law falls into the third *Robertson* category, and an individual can bring an as-applied challenge to the law. *Id.*

Our task here is to apply that framework to the law that defendant challenges, ORS 166.155(1)(c)(A) (2017), *amended by* Or Laws 2019, ch 553, § 1.[3] That law provides that a person commits second-degree intimidation if the person "intentionally, because of the person's perception of race, color, religion, sexual orientation, disability or national

---

[3] The legislature amended ORS 166.155 in 2019 to rename the offense of intimidation to "bias crime" and to add gender identity as a protected class. Or Laws 2019, ch 553, § 1. That law applies to crimes committed on or after July 15, 2019. Defendant here committed the offense on May 10, 2019. We therefore apply the 2017 version of the statute, although substantively, it does not affect our analysis.

origin of another person or of a member of the other's family, subjects the other person to alarm by threatening" to "inflict serious physical injury upon or to commit a felony affecting the other person" or that person's family member. ORS 166.155(1)(c)(A).

On appeal, the parties agree—as do we—that ORS 166.155(1)(c)(A) is directed at the pursuit of forbidden effects, namely, causing another personal alarm by threatening serious injury or to commit a felony. *See State v. Moyle*, 299 Or 691, 697-98, 705 P2d 740 (1985) (concluding that the harassment statute, which prohibits harassing, annoying, or alarming another person through written or telephonic threats, is aimed at forbidden effects). The parties also agree—and we again agree—that the harm identified in the law is one that can be brought about by the use of words, *e.g.*, threats. *See id.* In short, the law is one that falls into the second *Robertson* category. As such, we are required to evaluate the law to determine if it "appears to reach communication privileged by Article I, section 8, or whether the law can be interpreted to avoid such overbreadth." *State v. Rangel*, 328 Or 294, 300, 977 P2d 379 (1999). In doing so, we must maintain "reasonable fidelity to the legislature's words and apparent intent." *Id.* at 302.

A trifecta of cases in which the Oregon Supreme Court has interpreted laws similar to the second-degree intimidation statute help illustrate, both individually and collectively, the constitutional parameters of laws that are designed to protect Oregon citizens against harassment and threats. We thus describe those cases in some detail.

In *Moyle*, 299 Or 691, the Supreme Court construed a harassment law that prohibited a telephonic or written threat, *former* ORS 166.065(1)(d) (1971), *renumbered as* ORS 166.065(1)(c) (1987). That law provided that a person commits the crime of harassment if, "with intent to harass, annoy or alarm another person," the defendant "[s]ubjects another to alarm by conveying a telephonic or written threat to inflict serious physical injury on that person or to commit a felony involving the person or property of that person or any member of that person's family, which threat reasonably would be expected to cause alarm." *Id.* at 693.

The court first determined that the law was a category two law under *Robertson*. *Id.* at 702. In light of that conclusion, the court thus had to assess whether the law was overbroad and whether it could be narrowed to avoid constitutional infirmity. *Id.* In addressing the first question, the court concluded that the statute as written could implicate constitutionally protected expressions. *Id.* But the court narrowly construed several of the key elements and concluded that the law was facially constitutional. *Id.* at 703. The court's analysis began with the term "alarm." *Id.* In the statute's context, the court concluded that "alarm" meant more than the "mere inconvenience or feelings of anguish"; rather, the court held that "alarm" meant "being placed in actual fear or terror resulting from a sudden sense of danger." *Id.*[4] The court also read "threat to inflict serious physical injury" to mean "fear of physical harm to one's person." *Id.* In the court's view, that construction was consistent with the "traditional breach of the peace requirement that fear of imminent personal violence be instilled in the victim." *Id.* And in light of those narrowing constructions, the court construed "felony" to cover only threats to commit "violent felonies." *Id.*

The court then considered whether the fact that the law required neither proof of a specific intent to carry out the threat nor an ability to do so affected its constitutionality. *Id.* It ultimately concluded that it did not, because the requirements of actual alarm and the reasonableness of that alarm had a "similar purpose." *Id.* In other words, the practical effect of those elements meant that the law limited the reach of the law to threats that are not constitutionally protected, namely threats that "are so unambiguous, unequivocal and specific to the addressee that they convincingly express to the addressee the intention that they will be carried out." *Id.* Construing the statute in that manner restricted the law to those threats that would objectively—not just subjectively—cause the victim to believe that the threat will be carried out. *Id.* at 703-04.

---

[4] The court did not explicitly tie that narrowing construction to any of the law's text; rather, it simply stated its understanding that alarm, as used in the statute, meant being placed in actual fear or terror. *Id.*

Finally, the court went on to read the law to punish "only the person who expresses the intent to carry out the threatened conduct" and "only if that person conveys the threat to the intended victim[.]" *Id.* at 704. Construing the law in that manner would distinguish between punishable threats and "ambiguous, equivocal or non-addressee" statements to inflict injury that does not—or should not—cause a reasonable belief that the threat will be carried out. *Id.*

Relying heavily on *Moyle*, the court in *Rangel* applied a narrowing construction in construing a law that prohibited stalking. In *Rangel*, the state charged the defendant with stalking under ORS 163.732. 328 Or at 296. That statute provided that a person commits stalking if they "knowingly alarm[] or coerc[e] another person" by engaging in "repeated and unwanted contact" and it is "objectively reasonable for a person in the victim's situation to have been alarmed or coerced" and the repeated and unwanted contact cause the victim "reasonable apprehension regarding the personal safety" of the victim. *Id.*

Following *Moyle*, the court read "alarm" to be punishable as an element of stalking only if it constitutes a threat. *Rangel*, 328 Or at 303. And although the statute used the term "knowingly," and thus did not require a specific intent to carry out the threat or to have any present ability to do so, the court applied the same narrowing construction as it did in *Moyle*. *Id.* at 304. The court concluded that the requirements of actual alarm and the objective reasonableness of the alarm achieved the same "purpose and effect" as having the specific intent. *Id.* at 305-06.

Finally, in *State v. Johnson*, 345 Or 190, 191 P3d 665 (2008), the court construed a different subsection of the harassment statute. ORS 166.065(1)(a)(B) provided that a person commits the crime of harassment if the person "intentionally" "harasses or annoys another person by," among other options, "[p]ublicly insulting such other person by abusive words or gestures in a manner intended and likely to provoke a violent response[.]" In short order, and with only a fleeting reference to *Moyle* and no mention of *Rangel*, the court concluded that the law was facially unconstitutional. *Johnson*, 345 Or at 196. The court first noted that the law

contained no requirement that the offender act violently or offer to act violently, that the victim actually be put in fear of violence, that the victim respond violently or even respond at all, or that any possible violence be imminent. *Id.* at 195. Instead, the offense was complete if the person said words or made gestures in public to provoke a violent response "by *someone* at *some time* and the hearer" is harassed or annoyed. *Id.* (emphasis in original).

Those absent elements—and particularly the absence of any requirement that violence be imminent—led the court to conclude that the law was facially unconstitutional: a harassment statute that contained no requirement that violence is imminent "sweeps too much protected speech within its reach to survive a facial challenge." *Id.* at 196. Although laws can protect people from "exposure to a reasonable fear of immediate harm due to certain types of expression," the legislature cannot make criminal annoying or harassing speech and expression. *Id.* at 196-97.

*Moyle* and *Rangel* on the one hand, and *Johnson* on the other, serve as bookends for our analysis of ORS 166.155(1)(c)(A). We must decide whether ORS 166.155 (1)(c)(A) can be construed, as in *Rangel* and *Moyle*, to apply only to proscribable threats, *i.e.*, those threats that instill in the victim (1) a fear of imminent and serious personal violence, (2) that is unequivocal, and (3) is "objectively likely to be followed by unlawful acts," or whether, as in *Johnson*, the law simply attempts to criminalize unpleasant and annoying expression that does not put the hearer in fear of imminent violence.

We conclude that the second-degree intimidation statute is not simply an attempt to criminalize offensive and annoying expression; rather, it is intended to protect individuals from alarm that is created by threats of serious physical injury and for that reason, is facially constitutional. To recap, ORS 166.155(1)(c)(A) prohibits "intentionally" "subject[ing] the other person to alarm by threatening to inflict serious physical injury upon or to commit a felony" affecting the other person or that person's family member and because of the perception of the other person's race, color, religion, sexual orientation, disability, or national

origin. Many of the law's terms are the same as in *Moyle* and *Rangel*, and, as in those cases, we construe them so as to limit the law's reach to creating a fear of imminent personal violence likely to be carried out. "Alarm" means "being placed in actual fear or terror resulting from a *sudden sense of danger*." *Moyle*, 299 Or at 703 (emphasis added). That limits the statute to "more than mere inconvenience or feelings of anguish which are the result of angry or imposing words[.]" *Id.* Additionally, ORS 166.155(1)(c)(A) specifies the kind of fear or terror that must be threatened—that of "serious physical injury" or commission of a "felony." As in *Moyle*, we read both terms to limit the kind of harm to that of imminent personal violence. The "serious physical injury" phrasing indicates that the legislature intended to prevent "the fear of physical harm to one's person." *Id.* at 703. That, in turn, is consistent with the traditional breach of peace requirement that "fear of imminent personal violence" be instilled. *Id.* The same holds true with respect to the phrase "to commit a felony"—consistent with the law's focus on personal harm, and as the court in *Moyle* did, we construe that term to "cover only threats to commit *violent* felonies" against people. *Id.* (emphasis in original).

Thus, the term "alarm," in conjunction with the type of harm specified in the statute, limits its reach to acts that inflict a sudden sense of danger, an actual fear of imminent personal violence. So construed, and in contrast to *Johnson*, the law avoids running afoul of Article I, section 8. 345 Or at 196 (law was facially unconstitutional in part because it lacked an imminency requirement).

We also read ORS 166.155(1)(c)(A) to reach only unequivocal and unambiguous threats that express to the victim that the threat will be carried out (the second and third requirements of a constitutionally proscribable threat). Importantly, the statute requires that the defendant act intentionally. That term further limits the reach of the law, as illustrated by contrast with *Moyle* and *Rangel*. As noted, in *Moyle*, the law required neither proof of specific intent to carry out the threat nor the ability to do so. 299 Or at 703. But the court nonetheless narrowly construed the harassment statute and concluded that the elements of

actual alarm and the objective reasonableness of that alarm had a similar purpose, inasmuch as those elements limited the reach of the law "to threats which are so unambiguous, unequivocal and specific to the addressee that they convincingly express to the addressee the intention that they will be carried out." *Id.* at 703; *see also Rangel*, 328 Or at 305-06 (applying similar analysis to that in *Moyle*).

Unlike the statutes in *Moyle* and *Rangel*, ORS 166.155(1)(c)(A) *does* require a specific intent to carry out the threat—an act is criminalized only if the defendant "intentionally *** subjects the other person to alarm by threatening" to inflict harm. "Intentionally" means that that the person acts with "a conscious objective to cause the result[.]" ORS 161.085(7). By requiring that the defendant act with the conscious objective to achieve the particular result of subjecting another person to alarm, *i.e.*, fear or terror of serious physical injury or the commission of a violent felony, the law is limited to those threats that are "so unambiguous, unequivocal and specific to the addressee that they convincingly express to the addressee the intention that they will be carried out." *Moyle*, 299 Or at 703.[5] Conversely, the intentionally mental state ensures that the law does not capture "hyperbole, rhetorical excesses, and impotent expressions of anger or frustration[,]" all of which are unlikely to be accompanied by that culpable mental state. *Rangel*, 328 Or at 303 (internal quotation marks omitted).

Defendant maintains that the statutes in *Moyle* and *Rangel* were constitutional "*only* because of the 'objective reasonable[ness]' elements of the underlying statutes." (Emphasis in defendant's brief.) That much is true, as far as it goes. Defendant is correct that the laws challenged in both cases required that the victim's alarm be reasonable (in *Rangel*, that it be "objectively" reasonable) in the circumstances and that that requirement was important to

---

[5] *Moyle* also required that the individual act with intent, but with the intent to "harass, annoy or alarm another person," not the intent to place someone in actual fear or terror resulting from a sudden sense of danger. *Id.* at 698. The latter intent, which is required by ORS 166.155(1)(a)(C), carries with it a statutory requirement that was missing in the statute at issue in *Moyle*—a conscious objective to make a genuine threat that is perceived as such and not just as a means to harass or annoy another person.

the court's determination that the laws could be construed to be constitutional. That limit was necessary because both statutes required lesser culpability than an intent to cause the harm. *Moyle*, 299 Or at 703 (noting that the law did not require proof of specific intent to carry out the threat nor of a present ability to do so); *Rangel*, 328 Or at 305 (the law, which used the term "knowingly," did not expressly require a specific intent to carry out the threat nor any present ability to do so).

But neither case suggests that the presence of an objective reasonableness element is the only way for a law of this kind of be constitutional. We do not believe that any magic words are required to pass constitutional muster. Rather, the question is whether the elements of any particular law can be construed so as not to reach protected speech. As described above, ORS 166.155(1)(c)(A) has elements that neither *Moyle* nor *Rangel* had, including the requirement that the person act intentionally. That mental state, in conjunction with the other elements of the law, limit the law's reach to constitutionally proscribable threats.

Accordingly, we conclude that, as construed, ORS 166.155(1)(c)(A) is not overbroad and the trial court correctly denied defendant's demurrer.

## FIRST AMENDMENT CHALLENGE

Defendant also contends that ORS 166.155(1)(c)(A) is facially unconstitutional under the First Amendment. Under the First Amendment, the government cannot discriminate against particular kinds of speech that are based on the "ideas or opinion it conveys." *Iancu v. Brunetti*, ___ US ___, 139 S Ct 2294, 2299, 204 L Ed 2d 714 (2019). Laws that target speech based on its communicative content are presumptively invalid. *R. A. V. v. City of St. Paul*, 505 US 377, 395, 112 S Ct 2538, 120 L Ed 2d 305 (1992). Threats of violence, on the other hand, "are outside the First Amendment." *Id.* at 388. Defendant, relying on *R. A. V.*, argues that because ORS 166.155(1)(c)(A) prohibits certain acts that are motivated by particular types of bias, it is an impermissible content-based restriction.

We disagree. The law at issue in *R. A. V.* criminalized placing

> "a symbol, object, appellation, characterization or graffiti, including, but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender."

505 US at 380. The United States Supreme Court struck down that statute as unconstitutional because the law was a content-based restriction; the law criminalized "fighting words that contain \* \* \* messages of 'bias-motivated' hatred" or "messages based on virulent notions of racial supremacy." *Id.* at 392 (internal quotation marks omitted). In reaching that conclusion, the Court observed that the law was "not a prohibition of fighting words that are directed at certain persons or groups," which would be facially valid. *Id.*

Unlike the law at issue in *R. A. V.*, ORS 166.155 (1)(c)(A) does not criminalize an expression of bias. Rather, it criminalizes the making of threats of physical harm or violent felonies that cause the victim alarm. To be sure, the law requires that the defendant's actions be motivated by the defendant's perception of the victim's characteristics, but the threat of alarm is not so confined. In other words, as the state observes, ORS 166.155(1)(c)(A) would apply regardless whether defendant threatened to "simply kill or blow up the victims (as he did here) or whether he told the victims of an intent to 'kill all gay men.'" Indeed, ORS 166.155(1)(c)(A) is precisely the kind of law that the Court presumed would be valid in *R. A. V.*—a "prohibition of fighting words that are directed at certain persons or groups." The trial court therefore correctly denied defendant's demurrer on First Amendment grounds.

Affirmed.